**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DE LAGE LANDEN FINANCIAL SERVICES, INC., | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | NO. 08-00533 |
| | : | |
| v. | : | |
| | : | |
| RASA FLOORS, LP, | : | |
| | : | |
| Defendant, | : | |
| | : | |
| v. | : | |
| | : | |
| 3COM CORP., and CAPITAL 4, INC., | : | |
| | : | |
| Third Party Defendants and Defendants on the Counterclaim. | : | |

<u>**MEMORANDUM RE: MOTION TO DISMISS**</u>

**Baylson, J.**                                    **March 5, 2009**

Presently before the Court is De Lage Landen's ("DLL" or "Plaintiff") Motion to Dismiss the Counterclaim for failure to state a claim under Fed. R. Civ. P. 12(b)(6).  This suit arises from a dispute over a series of contracts entered into by DLL, Rasa Floors ("Rasa" or "Defendant"), and several third parties for the provision of telephone services and equipment.  For the following reasons, the Court will deny in part and grant in part, with leave to amend.

**I.      Factual Background**

**A.      Complaint**

The facts of this case were previously outlined in some detail in the Memorandum and Order of this Court, (Doc. 32), denying Rasa's motion to dismiss for improper venue.  <u>See De</u>

Lage Landen Fin. Servs. v. Rasa Floors, LP, 2008 WL 4822033, at *1-2 (E.D. Pa. Nov. 4, 2008).

In summary, DLL, a Pennsylvania corporation, sued Rasa, a Texas company, for breach of a

"Rental Agreement," under which DLL allegedly agreed to lease telephone equipment to Rasa.

(Compl. ¶¶ 6, 18).  Before entering into the Rental Agreement, Rasa contracted for the provision

of telephone services with third-party Defendant and Defendant on the Counterclaim, Capital 4,

Inc. ("Capital 4") pursuant to a "Customer Agreement." (Compl. ¶¶ 8-9).  Under those

Agreements, Rasa only made payments to DLL, which would then "pass through" part of the

payments to Capital 4 for the services Capital 4 provided to Rasa.   (Compl. ¶¶ 10-11).

However, Capital 4 became insolvent in September 2007 and was no longer able to

provide the telephone services it had promised to Rasa, so DLL allegedly reduced Rasa's

monthly payments by the amount of the pass through.  (Compl. ¶ 12-13).  Rasa then stopped

making any payments to DLL.  (Compl. ¶ 14).  DLL alleges that the Rental Agreement contained

a specific clause that obligates Rasa to continue the payments to DLL regardless of the whether it

received services from Capital 4.  Specifically, DLL alleges that this clause provided that DLL

was not responsible for providing maintenance and/or service for the equipment; that Rasa's

claims for service and maintenance must be made to the supplier or manufacturer; and that such

claims could not affect Rasa's obligations under the Rental Agreement.  (Compl. ¶ 8; Ex. A).

DLL sued for breach of contract, asserting that Rasa was obligated to make its payments

to DLL despite the loss of services provided by Capital 4.  (Compl. ¶¶ 8, 18-20).  The Rental

Agreement contained a choice-of-law provision selecting Pennsylvania law to govern any issues

arising under that contract, as well as a forum selection clause also choosing Pennsylvania as the

proper jurisdiction.  (Compl. Ex. A)

B.     **Counterclaim**

Rasa has brought counterclaims against DLL as well as claims against Capital 4 and another party, 3Com Corporation ("3Com), the manufacturer of the communication equipment allegedly provided under the Rental Agreement.

In the fifty-six page, one-hundred and fifty-one paragraph "Facts" section of its Counterclaim, Rasa provides an extremely detailed account of the Agreements into which it entered and the relationships among the various parties involved.  In that account, Rasa alleges that Capital 4 developed a program for selling telecommunication services to small business, which it branded the "Power of $Zero Program."  (Countercl. ¶ 55).  Pursuant to a Customer Agreement, participants were promised telephone services for a set number of years at a fixed rate and either free telephone equipment, a cash rebate, or a combination of both.  (Countercl. ¶¶ 55(b)-(c); 56(a)-(b)).  Under the Program, Capital 4 would allegedly arrange for a customer to borrow money from an equipment leasing company, such as DLL, and the customer would repay the borrowed money with interest, pursuant to a Rental Agreement with the leasing company.[1] (Countercl. ¶ 55(f)).  The leasing company paid the borrowed money to Capital 4, which in turn used the money to provide the telephone services for the customers.  (Countercl. ¶ 55(f)).

Rasa further alleges that Capital 4 would make a small payment to either 3Com for any equipment provided to the customer or to the customer, if the customer chose the cash bonus option rather than the equipment option.  (Countercl. ¶ 55(h)).  Capital 4 would also pay the value-added reseller for selling the program.  (Countercl. ¶ 55(i)).  The customer would make

---

[1]The Rental Agreement is sometimes referred to as the Funding Agreement in the various documents before the Court.

monthly payments to the leasing company to repay its loan, and the leasing company would then "pass through" a portion of those monthly installments to Capital 4 as "deferred maintenance" for the phone services.  (Countercl. ¶ 55(k)).

Rasa alleges that Capital 4 entered into an agreement with 3Com, called the "Strategic Alliance Agreement," under which Capital 4 would promote and exclusively use 3Com communication equipment in the Program.  3Com, in return, would assist Capital 4 in marketing the Program.[2]  (Countercl. ¶ 60-61; Ex. 5, Pg.).  Rasa further alleges that Capital 4 and 3Com later changed the name of the program to the "3Com Power of Zero Solution" and extended their relationship under a modifying agreement entitled the "Rules of Engagement Addendum." (Countercl.  ¶¶ 72-73; Ex. 7).  The Addendum allegedly addressed the involvement of DLL, which would remain the sole owner of the leased equipment, and required Capital 4 to notify 3Com of any changes in the Rental Agreement.  (Countercl. ¶¶ 73(h)-(i); 74; Ex. 7, Pg. 8). According to Rasa, Capital 4 and 3Com entered into yet another agreement, called the "Go Dark Agreement," obligating 3Com to pay for all communication services required to be provided by Capital 4 under its existing contracts if Capital 4 could not provide those services.  (Countercl. ¶ 128; Ex. 3, Pg. 12).  Rasa also alleges that DLL and Capital 4 entered into a Business Communications Program Agreement, or master program agreement, a standard form document

---

[2]Rasa has attached this agreement, and the other agreements and documents discussed in this section, as exhibits to its Counterclaim.  DLL has not challenged the authenticity of those agreements.  A district court may consider a "document integral to or explicitly relied upon in the complaint."  In re Burlington Coat Factory Securities Litigation, 114 F.3d 1410, 1426 (3d Cir. 1997) (citation omitted); see also Pension Ben. Guar. Corp. v. White Consol. Industries, Inc., 998 F.2d 1192, 1195 (3d Cir. 1993) (holding that "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.").  Therefore, this Court will take into consideration these documents as attached to the Counterclaim.

used to establish financing arrangements for equipment vendors.  (Countercl. ¶¶ 62-63; Ex. 6).

Rasa alleges that agreement allowed DLL to provide equipment leases in the name of Capital 4.

(Countercl. ¶ 64; Ex. 6, § B).

Rasa also describes at length the website maintained by the Program, pursuant to the

Rules of Engagement Addendum, which explained the Power of $Zero Partnership and the 3Com

Power of $Zero Solution.  (Countercl. ¶¶ 75-78; Ex. 7, Pg. 6).  Specifically, the website

described the relationship between the Customer Agreement and the Rental Agreement, the

obligations of the customer under the Agreements, and the responsibilities of Capital 4, 3Com,

and DLL under the Agreements.  (Countercl. ¶ 75;  Ex. 1, Pgs. 11-14).  Rasa suggests that this

website led it to believe that the Program was maintained by a "partnership" that included 3Com,

Capital 4, and DLL.  (Countercl. ¶ 101(k))[3].  Rasa alleges that the Customer Agreement that it

signed with Capital 4 incorporated the "eBrochure" found on the website.  (Countercl. ¶ 95; Ex.

1, Pg. 9).

Rasa further alleges that DLL enlisted a number of its existing business equipment

vendors to help promote the 3Com Power of $Zero Solution.  (Countercl. ¶ 81).  One of those

vendors, Northcentral Communications Corporation ("NCC"), allegedly approached Rasa about

the Program in December 2005.  (Countercl. ¶¶ 92-94).  Rasa agreed to the Program, signing the

Customer Agreement, which was prepared solely by the alleged partnership and provided by

---

[3]Rasa's allegations consistently assert that DLL, Capital 4, and 3Com constituted a "partnership," but Rasa does not allege any specific partnership agreement.  This allegation continues into the RICO counterclaim, as discussed below.  Rasa may be referring to the "Power of $Zero Partnership" mentioned in several of the documents attached as exhibits to the Counterclaim, including the eBrochure.  However, those documents do not identify the specific members of that "Partnership."  (See Countercl., Ex. 1, Pg. 11).

NCC, on December 5, 2005.  (Countercl. ¶¶ 94, 97-98).  At that time, Rasa alleges Capital 4 faxed a credit to Rasa, which Rasa completed and returned to Capital 4.  Capital 4 then allegedly sent the application to DLL.  (Countercl. ¶¶ 102, 105).  According to Rasa, it did not know the identity of the leasing company (DLL) and was not able to negotiate directly with that company.  (Countercl. 112(g)).

Rasa alleges it signed a one-page Rental Agreement, delivered to it in Texas by Capital 4 or NCC, and returned the signed Rental Agreement to Capital 4 on December 5, 2005.  (Countercl. ¶¶ 95, 106-108).  According to Rasa, NCC returned the next day with a two-page version of the Rental Agreement, which Rasa once again signed and which was counter-signed by DLL on December 16, 2005.  (Countercl. ¶¶ 99, 109).  Both versions of the Rental Agreement allegedly indicated that the Agreement was with "Capital 4 Financial Services, a program of De Lage Landen Financial Services."  (Countercl. ¶¶ 106, 107).  Rasa also alleges that it never received any equipment from DLL and that Capital 4 indicated that the Rental Agreement with DLL would only serve as a funding mechanism through which Capital 4 could leverage its costs.  (Countercl. ¶¶ 101(l); 113).[4]

_____

[4]Rasa has also alleged that DLL, Capital 4, and 3Com have engaged in similar fraudulent acts affecting at least seventeen other businesses.  (Countercl. ¶ 151).  DLL has filed similar suits, which have been assigned to the undersigned, against other companies that have allegedly violated their respective Rental Agreements under the same 3Com Power of $Zero Solution at issue here.  See De Lage Landen Fin. Servs. v. Viewpoint Computer Animation, Inc., 08-cv-0534 (motion to dismiss counterclaims pending); De Lage Landen Fin. Servs. v. Grayson County College, 08-cv-0532 (settled); De Lage Landen Fin. Servs. v. Barton Nelson, Inc., 08-cv-0530 (motion to dismiss counterclaims denied and case subsequently settled); De Lage Landen Fin. Servs. v. Mid-America Healthcare, LP, 08-cv-1264 (motion to dismiss for improper venue denied and case subsequently settled).

Furthermore, a suit filed by 3Com against Capital 4 concerning their relationship under the 3Com Power of $Zero Solution is currently pending in the Southern District of New York.  See 3Com Corporation v. Capital 4, Inc., et al., S.D.N.Y. 07-cv-8707.  Similarly, DLL has filed a

C.      **Procedural History**

DLL filed its Complaint for breach of contract on February 1, 2008.  (Doc. 1).  Rasa then

moved to dismiss for lack of personal jurisdiction and improper venue, which this Court denied

in the Memorandum and Order on November 5, 2008.  (Doc. 32).  On November 18, 2008, Rasa

filed its Answer, Affirmative Defenses, and Counterclaim, asserting claims against DLL, as well

as 3Com and Capital 4 as third-party Defendants and Defendants on the Counterclaim.  (Doc.

34).[5]  Rasa asserts the following claims against DLL:

|  |  |
|---|---|
| Count VIII | Fraudulent Misrepresentation |
| Count IX | Conspiracy to Commit Fraud |
| Count XI | Violation of the Texas Consumer Protection Law |
| Count XII | Violation of the Federal RICO statute |
| Count XIII | Request for Rescission of Contracts |
| Count XIV | Violation of Texas Usury law |
| Count XV | Violation of Pennsylvania Criminal Usury law |

DLL has now moved to dismiss all the counterclaims brought against it.  (Doc. 38).[6]

II.     **Legal Standards**

A.      **Jurisdiction**

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because the

---

suit against Capital 4 in the Eastern District of Pennsylvania.  See De Lage Landen Fin. Servs. v.
Capital 4, Inc., 07-cv-3262 (Yohn, J.).

[5]After reviewing the Counterclaim, this Court noted that Rasa properly joined 3Com and
Capital 4 as third-party defendants but questioned whether Rasa properly joined them as
Defendants on the Counterclaim.  The Court therefore ordered the parties to explain their
respective positions on that issue.  (Doc. 52).  Rasa has asserted that the joinder was proper under
Fed. R. Civ. P. 13, 18, 19, and 20, (Doc. 53), and 3Com has responded that it does not oppose
Rasa's arguments, (Doc. 57).

[6]3Com has also filed a motion to dismiss the counterclaims against it under Fed. R. Civ.
P. 12(b)(6).  (Doc. 47).

parties are citizens of different states and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

**B.     Standard of Review**

When deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court may look only to the facts alleged in the complaint and its attachments.  Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1251, 1261 (3d Cir. 1994).  The Court must accept as true all well-pleaded allegations in the complaint and view them in the light most favorable to the plaintiff.  Angelastro v. Prudential-Bache Sec., Inc., 764 F.2d 939, 944 (3d Cir. 1985).  The motion will be granted only when it is certain that no relief could be granted under any set of facts that plaintiff could prove.  Ransom v. Marrazzo, 848 F.2d 398, 401 (3d Cir. 1988).

A valid complaint requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  In order to state a valid complaint a plaintiff must make a "showing" that is more than just a blanket assertion that he is entitled to relief. Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008).  The Supreme Court has also cautioned "that without some factual allegation in a complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice' but also 'grounds' on which the claim rests."  Id. (citing Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1965 n.3 (2007)).

Furthermore, any allegations of fraud must comply with the standard set out under Federal Rule of Civil Procedure 9(b), which provides that, "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  This requirement of particularity means a plaintiff must plead the circumstances surrounding the alleged fraud in order to put the defendant on notice of the precise misconduct at issue.  See

Seville Indus. Mach. Corp. v. Southmost Mach. Corp., 742 F.2d 786, 791 (3d Cir. 1984).

## III.    Parties' Arguments

DLL offers several reasons for dismissing the counterclaims brought against it.  First, DLL argues that the choice-of-law provision in the Rental Agreement, which selects Pennsylvania law, governs all claims between DLL and Rasa because the Rental Agreement is the only contract to which both Plaintiff DLL and Defendant Rasa are direct parties.  DLL further argues that all of Rasa's tort-based claims, including the fraudulent misrepresentation, conspiracy, and RICO claims, must be dismissed due to the Pennsylvania parol evidence rule and gist of the action doctrine.  DLL also asserts that the conspiracy and RICO claims are not adequately pled and that the Texas Consumer Protection Law claim and Texas usury claim should be dismissed because only Pennsylvania law applies.  Finally, DLL contends that Rasa is barred from bringing a claim under the Pennsylvania criminal usury law because that statute does not provide a private right of action, and even if this Court construes that claim as a civil one, only non-corporate entities may bring civil claims under Pennsylvania law.

Rasa responds that Texas law applies, as the Rental Agreement and Customer Agreement are sufficiently interrelated to be read together as a single contract, and the Customer Agreement contains a choice-of-law clause selecting Texas law.  When two inconsistent clauses appear in a single contract, Rasa argues that the first executed provision must prevail.  Rasa asserts that the clause from the Customer Agreement, choosing Texas law, was signed first and thus controls over the clause in the Rental Agreement, choosing Pennsylvania law.  Rasa argues that the Texas parol evidence rule and gist of the action doctrine do not bar the tort-based claims and that the conspiracy and RICO claims are adequately pled.  Furthermore, as Texas law applies, Rasa

argues it may bring the claims under the Texas Consumer Protection Law and the Texas usury statute.  Rasa also asserts that it is a limited partnership, rather than a corporation, and thus is not barred from bringing a claim under the Pennsylvania criminal usury statute.

**IV.**    **Discussion**

   **A.**    **Choice-of-law Clauses**

As described above, the parties disagree about the application of two different choice-of-law clauses found within the Customer and Rental Agreements.[7]  In its prior decision in this case, the Court determined that the forum selection clause in the Rental Agreement, which chose Pennsylvania as a forum, was valid and enforceable for purposes of establishing personal jurisdiction and venue, despite the existence of a forum selection clause in the Customer Agreement that chose a different jurisdiction.  Rasa, 2008 WL 4822033, at *4-5.  The Court noted that the Rental Agreement was the only agreement signed by both Rasa and DLL and that it could not be negated at that stage by the existence of another agreement between Rasa and a third party, even if the Court later decided that the two agreements must be read together.  Id. at *6.  Similarly, the Rental Agreement contains a valid and enforceable choice-of-law provision. This Court cannot conclude at this stage that the competing choice-of-law provision in the Customer Agreement the choice-of-law clause in the Rental Agreement based solely on

_____

    [7]The Customer Agreement clause, which is found in the incorporated eBrochure, reads in relevant part: "The Agreement shall be governed by, construed, and enforced in accordance with the law of the State of Texas." (Countercl. Ex. 1. Pgs. 9, 14).
    The clause in the Rental Agreement reads in relevant part: "This Rental Agreement shall in all respects be interpreted and all transactions subject to this Agreement and all rights and liabilities of the parties under the Rental Agreement shall be determined and governed as to their validity, interpretation, enforcement, and effect by the laws of the Commonwealth of Pennsylvania . . . ."  (Compl. Ex. A ¶ 21).

allegations in the Counterclaim that suggest the Court might, after discovery, read the Agreements together.

In its very detailed Counterclaim, Rasa has alleged facts which, if true, may lead the Court to conclude that the Agreements could and should ultimately be construed together. Because the choice-of-law issue first requires this Court to construe the contracts, which in this case likely requires a fact-intensive inquiry into the intent of all the parties involved and the circumstances surrounding the execution of the various Agreements, the Court cannot make a final decision on the choice-of-law question without, at least, discovery on those facts.  See Children's Hosp. of Philadelphia v. Horizon NJ Health, 2008 WL 4330311, at *7 (E.D. Pa. September 22, 2008) ("Plaintiff correctly responds that a motion to dismiss does not present an appropriate forum for a choice of law (Pennsylvania or New Jersey) determination."); Harmelin v. Man Financial Inc., 2007 WL 1521563, at *1 (E.D. Pa. May 23, 2007) (reviewing prior cases in which this Court had denied motions to dismiss because the Court "did not believe it could appropriately determine the choice of law issue until discovery was completed" and denying a motion to dismiss for the same reason).

Furthermore, unlike the Complaint, which only discussed the Rental Agreement, Rasa's Counterclaim alleges facts that tie DLL to both the Rental Agreement and the Customer Agreement.  Thus, while the Court was able to decide that the forum selection clause in the Rental Agreement governed the claims in the Complaint on a 12(b)(2) motion to dismiss for improper venue, the Court cannot similarly determine that the choice-of-law clause in the Rental Agreement governs the entirety of the relationship between Rasa and DLL, as alleged in Rasa's Counterclaim, on this 12(b)(6) motion to dismiss by DLL.

-11-

Therefore, discovery must take place before a decision can be made as to whether the two

Agreements should be read as one contract and if so, which choice-of-law clause, if any, should

apply.[8]

**B.     Fraudulent Misrepresentation Claim (Count VIII)**

Without determining the applicability of either choice-of-law clause, this Court concludes

that the fraudulent misrepresentation claim survives the motion to dismiss.  Whether applying the

law of Texas or Pennsylvania, neither the parol evidence rule nor the gist of the action doctrine

will necessarily bar the tort claims so as to require dismissal at this stage.

**1.     Parol Evidence Rule**

_____DLL suggests that the parol evidence rule will bar the admission of any representations

not contained within the Rental Agreement to alter the terms of the written, integrated contract.

If DLL is correct and the parol evidence rule will bar consideration of evidence necessary to

establish a contract or tort claim, the Court may properly grant the motion to dismiss. See Coram

Health Care Corp. v. Aetna U.S. Healthcare, Inc., 94 F. Supp. 2d 589, 592 (E.D. Pa. 1999); Bray

v. Dewese, 2008 WL 623824, at *2 (E.D. Pa. March 6, 2008).

Rasa suggests that the parol evidence rule does not bar the misrepresentation claim

because, if the two agreements are considered one contract, they would not be "extrinsic" to one

another; thus, representations in one part of the whole contract would be admissible to show that

DLL made fraudulent misrepresentations in another part of the same contract.  (Def.'s Brief at

18-23).  Thus, Rasa argues that if it successfully shows, after discovery, that the Court should

_____

[8]Presumably, this issue can be decided on a motion for summary judgment, but if material
facts are disputed, special verdicts may be required at trial.

read the two Agreements together, the parol evidence rule would not bar the claim.  The Court

cannot dismiss Rasa's tort counterclaims based on the parol evidence rule because it cannot

determine at this stage, without the aid of discovery, how it should construe the contracts.[9]

Furthermore, even if Rasa is not successful in showing that the Agreements should be

jointly construed, Rasa suggests its fraudulent misrepresentation claim falls within an exception

to the parol evidence rule under both Pennsylvania and Texas law.  First, both Pennsylvania and

Texas recognize an exception to the rule when a party alleges fraud in the execution, which

occurs when a party represents that a term will be included in a written agreement and that term

is later omitted by fraud, accident, or mistake.  See Coram, 94 F. Supp. 2d 589, 592 (E.D. Pa.

1999); ISG State Operations, Inc. v. Nat'l Heritage Ins. Co., Inc., 234 S.W.3d 711, 720 n.11

(Tex. App. 2007).  Here, Rasa asserts in its brief that such an omission occurred when the Rental

Agreement was executed without including the same terms as those set forth in the related

Customer Agreement, thus bringing Rasa's claim within the fraud in the execution exception.

(Def.'s Brief at 22).  This is different than the allegations in De Lage Landen Financial Services

v. Barton Nelson, Inc., supra n.8, where the defendant explicitly admitted that it was not

suggesting fraud in the execution had occurred.  2008 WL 479189, at *4 n.7 (E.D. Pa. Nov. 4,

2008).  Moreover, as Rasa notes, Texas recognizes an exception when a party alleges fraud in the

inducement.  Suttles v. Kastleman, 2002 WL 1729519, at *3 (Tex. App. July 16, 2002).  As

Rasa's entire counterclaim is based on alleged misrepresentations that induced it to sign both

---

[9]This Court considered a similar argument regarding the role of the parol evidence rule on a motion to dismiss counterclaims in a case very similar to the present one, De Lage Landen Fin. Servs. v. Barton Nelson, Inc., 2008 WL 4791891, at *4-5 (E.D. Pa. Nov. 4, 2008).  However, the Court did not render a final conclusion on the admissibility of the written statements from the related contract because it found the gist of the action doctrine otherwise barred the tort claims.

Agreements, Rasa suggests that the fraud in the inducement exception to the parol evidence rule would apply if the claim were to proceed under Texas law.

Thus, the parol evidence rule will not necessarily bar Rasa's claim under either state's law.  Rasa has alleged sufficient facts to suggest either the two Agreements should be read together so that they are not "extrinsic" to one another or that an exception to the parol evidence rule would apply.  On a motion to dismiss for failure to state a claim, in which this Court takes the allegations in the light most favorable to the party asserting the claims, DLL has not shown that there are no set of facts under which Rasa would be entitled to relief due to the parol evidence rule.

### 2.     Gist of the Action Doctrine

Similarly, DLL has not shown that the gist of the action doctrine will necessarily bar Rasa's tort claims going forward under either state's law.  Under Pennsylvania law, the gist of the action doctrine "precludes a plaintiff from recasting a breach of contract claim into a tort claim." Penn City Inv. v. Soltech, Inc., 2003 WL 22844210, at *2 (E.D. Pa. Nov. 25, 2003) (citing Etoll, Inc. v. Elias/Savion Advertising, Inc., 811 A.2d 10, 14 (Pa. Super. Ct. 2002)).  For the tort action to survive, "'the wrong ascribed to [the] defendant must be the gist of the action, the contract being collateral.'" Etoll, Inc. , 811 A.2d at 14 (quoting Bash v. Bell Tel. Co., 601 A.2d 825, 829 (Pa. Super. 1992)).  The doctrine specifically bars claims on extra-contractual statements regarding duties or obligations of parties that are later outlined in the contract.  Penn City Inv., 2003 WL 2284410, at *3.  Similarly, Texas courts consider an action as brought in contract law if the gist of the action is the breach of contract, regardless of the form of the pleading.  OXY USA, Inc. v. Cook, 127 S.W.3d 16, 20 (Tex. App. 2003).

-14-

In <u>Nelson</u>, this Court considered whether the defendant's tort counterclaims were essentially the same as its contract claim, but reworded using tort language.  2008 WL 4791891, at *6.  This Court agreed with DLL that the defendant did not have a separate cause of action in tort because the gist of the defendant's claim was that DLL should be held liable for Capital 4's breach of the Customer Agreement.  <u>Id.</u> at 6-7.  In <u>Nelson</u>, the defendant specifically complained about two alleged misrepresentations in its tort claims: (1) that defendant was led to believe it would receive telephone equipment at no additional cost; and (2) that defendant was led to believe that DLL was a financing entity rather than a mere lessor of equipment.  <u>Id.</u>  However, the Court found that those representations were explicitly covered in the written contracts, and therefore the Court held that the cause of action for a breach of those obligations can only arise in contract, not tort.  <u>Id.</u>

The instant case is sufficiently distinguishable from <u>Nelson</u> to warrant a different outcome on the 12(b)(6) motion to dismiss.  First, in the instant case, Rasa has not brought a breach of contract claim against DLL, although it did allege a breach of contract claim against Capital 4 and 3Com.  Rasa has not suggested that DLL is responsible for breaching any of the terms set forth in either Agreement.  Rather, the gist of Rasa's Counterclaim against DLL is that DLL misrepresented facts about the relationship of the parties and the Power of $Zero Partnership, which induced Rasa to sign the Agreements.

Secondly, because the allegedly misleading statements in the instant case do not necessarily regard duties later outlined in the contract, in contrast to the statements and contract in <u>Nelson</u>, a fraud claim regarding those statements is not barred by the gist of the action doctrine.  For example, Rasa claims that DLL and the partnership made fraudulent

misrepresentations that led Rasa to understand that the program was developed to reduce payments over a ten year period; that Capital 4 Financial Services was a program of De Lage Landen Financial Services; and that the partnership consisted of DLL, Capital 4, and 3Com. (Countercl. ¶ 101).  Those representations were not specifically discussed in the Agreements. Although Rasa does refer to some representations in the Counterclaim that concern duties covered by the contract, the Court will not dismiss the fraud claim at this stage because some of the alleged misrepresentations are not covered by the Agreements.

Furthermore, Rasa's allegations as to the misleading conduct by DLL and the Partnership are far more comprehensive than the allegations made by the defendant in Nelson.  Given the broader and more detailed nature of Rasa's Counterclaim, particularly the factual allegations, this Court cannot conclude that Rasa is merely recasting contract claims using tort language.  Finally, in Nelson this Court observed that many decisions invoking the gist of the action doctrine occur at the summary judgment level.  2008 WL 4791891, at *6 n.12 (citing Metro Auto Sales v. Alfred Stein Inc., 2006 WL 237505, at *3 (E.D. Pa. Jan. 30, 2006) and Owen v. J. Roberts Sch. Dist. v. HTE, Inc., 2003 WL 735098, at *1 (E.D. Pa. Feb. 28, 2003)).  Because of the highly fact-intensive nature of Rasa's Counterclaim, this Court believes that the fraud claims are better suited for disposition after discovery, rather than at this early stage.

While the Court will therefore allow the fraudulent misrepresentation claim to proceed, the Court also notes that should it appear later in the litigation that Rasa is actually asserting a mere breach of contract claim,–i.e., that DLL did not satisfy its obligations as represented in the Agreements–rather than a true claim of fraudulent misrepresentation, the Court may address the viability of the fraud claims at a later stage.

### C.    Conspiracy to Commit Fraud Claim (Count IX)

First, because this Court has already found that the underlying fraud claim is viable despite the parol evidence rule and gist of the action doctrine, it will not grant DLL's motion to dismiss the conspiracy claim for failure to plead a viable substantive fraud claim. Rasa's conspiracy claim specifically relies on the alleged fraudulent misrepresentations that serve as the basis of the viable fraudulent misrepresentation claim in Count VIII. (See Countercl. ¶ 239).[10]

However, this Court noted that to prove conspiracy under Pennsylvania law, a party must also show that the alleged conspirator acted with malice or the intent to injure. Becker v. Chicago Title Ins. Co., 2004 WL 228672, at *13 (E.D. Pa. February 4, 2004) (citing Thompson Coal Co. v. Pike Coal Co., 412 A.2d 466, 472 (Pa. 1979)). Malice only exists when the sole purpose of the conspiracy is to cause harm and not when a party acts to advance their own business interests. Id.; see also Fleet Nat'l Bank v. Boyle, 2005 WL 2455673, at *12 (E.D. Pa. Sept. 12, 2005) (Davis, J.) (granting motion to dismiss conspiracy claim where defendant had legitimate purposes, such as raising capital and gaining access to markets, and explaining that

---

[10]DLL further suggests that the conspiracy claim should be dismissed because Rasa failed to adequately plead the elements of conspiracy, particularly an agreement among the members of the conspiracy. DLL argues that Rasa only pled conclusory allegations of such an agreement. This Court disagrees. For purposes of a motion to dismiss, this Court finds that Rasa has provided sufficient information in its detailed Counterclaim that DLL had entered into several agreements and acted in concert with the other alleged participants in the conspiracy, Capital 4 and 3Com.

Furthermore, with regards to the elements of conspiracy, the Federal Rules only require the pleader to meet the requirements of notice-pleading, even if the underlying fraud claim must be pled with particularity. See Fed. R. Civ. P. 8. In Twombly, the Supreme Court explained that to properly plead an agreement to engage in anti-competitive conduct for purposes of the Sherman Act, the plaintiff must provide "enough factual matter (taken as true) to suggest than an agreement was made." 127 S.Ct. at 1965. Under that standard, Rasa has adequately alleged facts suggesting DLL entered into an agreement with Capital 4 and 3Com to defraud Rasa.

"the fact that it may have been necessary to deceive the Plaintiff in order to carry out the scheme in no way indicates that they acted with malice solely to injure Plaintiff").[11]  Given that standard, Rasa has failed to adequately plead malice, or the lack of a personal business interest, on the part of DLL and thus has not alleged a proper conspiracy claim under Pennsylvania law.

Still, this Court has not yet determined that Pennsylvania law will govern the claims between the parties, as it is awaiting discovery to construe the contracts and apply the appropriate choice-of-law clause.  Notably, Texas does not have a similar requirement of malice.  See Lane v. Halliburton, 529 F.3d 548, 564 (5th Cir. 2008) (discussing the elements of civil conspiracy under Texas law (citing Eagle Props., Ltd. v. KPMG Peat Marwick, 912 S.W.2d 825, 828 (Tex. App. 1995))).  As noted above, the Court finds no other deficiencies with Rasa's pleadings on the conspiracy claim, so whether or not the conspiracy claim has been adequately pled turns on the choice-of-law clause.  As a result, the Court will await discovery and its decision on the choice-of-law provisions and will not dismiss the claim because it may have been properly pled under Texas law.  Furthermore, the Court will also grant Rasa leave to amend the conspiracy claim to allege facts indicating that DLL acted malice solely to injure the Plaintiff.

---

[11]Other District Courts have similarly interpreted the decision in Thompson Coal Co. to require allegations of malice and intent to injure in the pleadings.  See, e.g., Guaranty Towers, LLC v. Cellco Partnership, 2007 WL 2617651, at *6 (M.D. Pa. Sept. 6, 2007) (dismissing claim for civil conspiracy where plaintiff alleged that both defendants acted to obtain more revenue through the conspiracy and thus dis not have the sole intent to injure the plaintiff); Sim Kar Lighting Fixture Co. v. Genlyte, Inc., 906 F. Supp. 967, 977 (D.N.J. 1995) (granting motion to dismiss conspiracy claim where plaintiff alleged that defendant's law firm pressured plaintiff to perjure himself so that defendant would be successful in litigation because defendant's sole motivation was clearly not to harm plaintiff).

D.    **RICO Claim (Count XII)**

Rasa also brings a claim against DLL under the Racketeer Influenced Corrupt

Organization Act ("RICO"), 18 U.S.C. § 1961 et seq.  Rasa alleges that DLL and Defendants on

the Counterclaim, Capital 4 and 3Com, are "persons" within the meaning of the statute, who

acted through an "enterprise" in carrying out the unlawful scheme alleged in the Counterclaim.

The enterprise is alleged to be an association among the same three entities, which commenced

not later than February 7, 2005 and continued through the filing of the Complaint.  The

Counterclaim alleges that the three "persons" conducted transactions, including mail and wire

fraud, by sending documents to and attempting to collect monthly payments from Rasa and

others similarly situated, and that the "persons" received income as a result of this conduct.

(Countercl. ¶¶ 264-68).

DLL has moved to dismiss the Counterclaim because it does not meet the statutory

requirements and case law requisites under RICO.  To assert a valid claim under RICO, a

claimant must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering

activity as well as an injury resulting from the offensive conduct.  Sedima S.P.R.L. v. Imrex Co.,

473 U.S. 479, 496 (1985); Warden v. McLelland, 288 F.3d 105, 114 (3d Cir. 2002).

Furthermore, the claimant must allege the existence of two separate and distinct entities:  (1) a

"person"; and (2) an "enterprise" that "is not simply the same 'person' referenced to by a

different name."  Cedrick Kushner Promotions, Ltd. v. King, 533 U.S. 158, 161 (2001).  DLL

here asserts Rasa's pleadings do not adequately differentiate between the RICO "person" and the

alleged RICO "enterprise," thus violating the distinctiveness rule.

In Cedrick Kushner Promotions, the Supreme Court upheld the distinctiveness

-19-

requirement but concluded that any variation between the enterprise and the "person," even a formal organizational one, may be sufficient to satisfy the rule.  Id. at 162-63.  Rasa responds that it met the distinctiveness requirement by alleging that the RICO enterprise is the partnership or association formed by the RICO persons, who called the enterprise the "Power of $Zero Partnership."

However, Rasa's assertion is not an accurate description of the enterprise actually alleged in the Counterclaim, which specifically states, "The association-in-fact between Capital 4, Inc., 3Com Corporation and De Lage Landen Financial Services, Inc. ("enterprise") constitutes an enterprise within the meaning of 18 U.S.C. § 1961(4)."  (Countercl. ¶ 260).  Thus, the alleged members of the enterprise are the exact same three entities alleged to be the "persons" in paragraph 257 of the Counterclaim.  In Zavala v. Wal-Mart Stores, Inc., the District of New Jersey explained that "[i]f the members of the enterprise are the same as the persons, the distinctness requirement has not been met, as the 'person' and the 'enterprise' must not be identical."  447 F. Supp. 2d 379, 383 (D.N.J. 2006); see also Kolar v. Preferred Real Estate Inv., Inc., 2008 WL 2552860, at *4-5 (E.D. Pa. Jun 19, 2008) (finding violation of the distinctiveness rule where the plaintiff alleged that the defendants, a natural person, corporation, and several limited partnerships, were both individual "persons" and the collective "enterprise" for RICO purposes).  Thus, the Court finds that Rasa's pleadings here violate the distinctiveness rule.

DLL also made other challenges to the adequacy of the pleadings, including that Rasa has not sufficiently pled that DLL engaged in any racketeering activity.  Since the Court will allow Rasa to amend its RICO count to attempt to cure the improper allegation of an "enterprise," the Court will direct Rasa, assuming it does wish to amend its RICO Counterclaim, to follow the

Court's standard RICO case order (as described in the Order) and revise its RICO allegations to comply with these requirements.  This Court will consider a separate Case Statement as part of the amended pleading.  Bonovitacola Elec. Contractor, Inc. v. Boro Developers, Inc., 2002 WL 31388806, at *4 (E.D. Pa. 2002) ("'Courts may consider the RICO case statements in assessing whether plaintiffs' RICO claims should be dismissed.'" (quoting Glessner v. Kenny, 952 F.2d 702, 712 n.9 (3d Cir. 1991), overruled on other grounds, Jaguar Cars, Inc. v. Royal Oaks Motor Car Co., 46 F.3d 258, 260 (3d Cir. 1995))); Gintowt v. TL Ventures, 226 F. Supp. 2d 672, 679 (E.D. Pa. 2002) (same); Heintz Corp. v. Electro Methods, 1995 U.S. Dist. LEXIS 8346, at *3 (E.D. Pa. June 15, 1995) (Padova, J.) (accepting facts drawn from Complaint and RICO Case Statement as true in considering motion to dismiss); Greek Radio Network of Am., Inc. v. Vlasopoulos, 731 F. Supp. 1227, 1234 n.12 (E.D. Pa. 1990) (O'Neill, J.) (referring to Complaint and RICO Case Statement collectively as "the Complaint"); see also Chovanes v. Thoroughbred Racing Ass'n, 2001 U.S. Dist. LEXIS 375 (E.D. Pa. Jan. 18, 2001) (O'Neill, J.) .

### E.    Rescission (Count XIII)

As the Court will not dismiss the fraudulent misrepresentation or conspiracy claim and is allowing Rasa to amend the RICO claim, the claim for rescission may proceed at this stage because it relates primarily to relief if Rasa is successful on those claims.

### F.    Texas Consumer Protection Law and Usury Claims (Counts XI and XIV)

DLL argues that Rasa's claims under both the Texas Consumer Protection Law and the Texas usury statute must be dismissed because the valid choice-of-law provision in the Rental Agreement selects Pennsylvania law; DLL again responds that the Rental Agreement must be read with the Customer Agreement and that the Texas choice-of-law provision in the latter

Agreement is prevailing.  As noted above, the Court will not now determine how to construe the two contracts due to the fact-intensive nature of that inquiry.  Thus, because the Texas statutory claims may have been properly brought if Texas law ultimately applies, the Court will not dismiss those claims until, at the earliest, it determines the applicable choice-of-law provision.[12]

### G.      Pennsylvania Criminal Usury Claim (Count XV)

Although Rasa does not identify the specific statutes under which it intends to bring the Pennsylvania criminal usury claim in the Counterclaim, it does cite to several criminal statutory provisions in its brief, including 18 P.S. §§ 4806.1, 4806.3, 4806.5, and 4806.8.  However, the Court finds no indication, either in the statutory language or in the cases interpreting those provisions, that the state legislature intended to create a private right of action derived from that criminal statute.  As such, the Court will dismiss Rasa's Pennsylvania criminal usury claim.

An appropriate Order follows.

---

[12]Furthermore, the language of the two competing choice-of-law provisions are quite different in scope; where the Pennsylvania clause is broad and all-encompassing, the Texas clause is much more narrow.  In De Lage Landen Financial Services, Inc. v. Carservice International, Inc., 2001 WL 799870, at *2 (E.D. Pa. July 12, 2001), Judge Waldman explained that "[n]ot all choice of law provisions . . . are the same.  The parties may choose to limit their chosen law to the interpretation and execution of the terms of their agreement or they may draft the provision more broadly to encompass collateral matters arising from the relationship, including tort claims."  Depending on the scope of the clause, some claims alleged, such as statutory or tort claims, may fall outside the reach of the clause.  See, e.g., CottmanTransmission Sys., LLC v. Kershner, 492 F. Supp. 2d 461, 466 (E.D. Pa. 2007); Carservice Int'l, 2001 WL 799870, at *2; Stone St. Servs,. Inc. v. Daniels, 2000 WL 1909373 (E.D. Pa. Dec. 29, 2000); Coram, 94 F. Supp. 2d at 593.

Where a claim is not covered by a choice-of-law clause, the Court will generally engage in a basic choice-of-law analysis.  Grimm v. Citibank (South Dakota), 2008 WL 4925631, at *5 (W.D. Pa. Nov. 14, 2008).  Thus, depending on which choice-of-law clause prevails here, the statutory claims at issue may not be covered by that clause, and the Court may require a choice-of-law analysis to determine the appropriate law.  Given this uncertainty and that Texas law might be the applicable law after the Court's analysis, the Court will allow the claims to go forward because they may have been brought under the applicable state law.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DE LAGE LANDEN FINANCIAL | : | |
| SERVICES, INC., | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | NO. 08-00533 |
| | : | |
| v. | : | |
| | : | |
| RASA FLOORS, LP, | : | |
| | : | |
| Defendant. | : | |

**<u>ORDER</u>**

AND NOW, this 5th day of March 2009, after reviewing Plaintiff's Motion to

Dismiss Defendant's Counterclaim, it is hereby ORDERED that Plaintiff's Motion is:

(1)     DENIED with respect to Counts VIII, XI, XIII, and XIV;

(2)     DENIED with respect to Count IX, but Defendant has leave to amend the

Counterclaim to allege malice if it wishes to plead conspiracy under Pennsylvania

law;

(3)     GRANTED without prejudice and with leave to amend with respect to the RICO

claim in Count XII; and

(4)     GRANTED with prejudice with respect to the Pennsylvania criminal usury claim

in Count XV.

_____It is FURTHER ORDERED that should Defendant amend its Counterclaim to include a

properly pled RICO claim in Count XII, Defendant must also file a RICO Case Statement, which

includes the following, in substance:

a.  As to each Defendant on the RICO counterclaim, state the alleged misconduct and basis of liability of each Defendant.

b.  As to the racketeering activity alleged under each RICO count, include the following:

    i.  List each predicate act which Plaintiff on the Counterclaim alleges constitutes the RICO violation, including such specifics as names, dates, and types of communications or acts, and in doing so, Plaintiff may incorporate any exhibits to the Counterclaim;

    ii.  Describe how each predicate act is fraudulent and/or part of a pattern of racketeering activity;

    iii.  State how the alleged predicate acts relate to each other as part of a common plan.

c.  Describe in detail the alleged enterprise for each RICO claim.  A description of the enterprise shall include the following information:

    i.  The names of the individuals, partnerships, corporations, associations, or other legal entities that allegedly constitute the enterprise;

    ii.  The structure, purpose, function, and course of conduct of the enterprise;

    iii.  Whether any defendants are employees, officers, or directors of the alleged enterprise;

    iv.  Whether any defendants are associated with the enterprise; and,

    v.  Whether Plaintiff is alleging that the Defendants are individuals or entities separate from the alleged enterprise, that the Defendants are the enterprise itself, or members of the enterprise.

d.  Describe the alleged relationship between the activities of the enterprise and the pattern of racketeering activity.

e.  Describe how the racketeering activity differs from the usual and daily activities of the enterprise, if at all.

f.  Describe the direct causal relationship between the alleged injury and the violation of the RICO statute.

g.  Describe the effect of the enterprise on interstate or foreign commerce.

h.  If the complaint alleges a violation of 18 U.S.C. § 1962(c), state:

    i.  Who is employed by or associated with the enterprise; and,

    ii.  Whether the same entity is both the liable "person" and the "enterprise"

-24-

under 18 U.S.C. § 1962(c).

i.      If the complaint alleges a violation of 18 U.S.C. § 1962(d), describe the alleged conspiracy.

j.      Describe the alleged injury to business or property.

k.      Describe the direct causal relationship between the alleged injury and the violation of the RICO statute.

l.      Provide any additional information that you believe would be helpful in processing your RICO claim.

BY THE COURT:

/s/ Michael M. Baylson
Michael M. Baylson, U.S.D.J.

O:\CIVIL 07-08\08-533 DeLage v. Rasa\De Lage Landen v. Rasa - mtd counterclaim.wpd

-25-