## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DE LAGE LANDEN FINANCIAL SERVICES, INC., | : : : | CIVIL ACTION |
| Plaintiff, | : : | NO. 08-0533 |
| v. | : : | |
| RASA FLOORS, LP, | : : | |
| Defendant, | : : | |
| v. | : : | |
| 3COM CORP., and CAPITAL 4, INC., | : : | |
| Third Party Defendants and Defendants on the Counterclaim. | : : : | |

### MEMORANDUM RE: MOTION TO DISMISS

**Baylson, J.**                                                              **March 31, 2009**

Presently before this Court is Third Party Defendant and Defendant on the Counterclaim 3Com Corporation's (hereinafter "3Com") Motion to Dismiss the Counterclaim of Defendant Rasa Floors, LP (hereinafter "Rasa" or "Defendant") for failure to state a claim under Fed. R. Civ. P. 12(b)(6). This dispute arises from a series of contracts entered into by Plaintiff De Lage Landen Financial Services (hereinafter "DLL" or "Plaintiff"), Rasa, and third parties Capital 4, Inc. (hereinafter "Capital 4"), and 3Com for the provision of telephone services and equipment. For the following reasons, this Court will deny in part and grant in part, with leave to amend.

I.      **Factual Background**

         A.      **Allegations Relevant to All Parties**

        The facts of this case were previously outlined in some detail in the Memorandum and

Order of this Court (Doc. No. 58), which granted in part and denied in part DLL's motion to

dismiss Rasa's Counterclaim.  See De Lage Landen Fin. Servs. v. Rasa Floors, LP, 2009 WL

564627, at *1-3 (E.D. Pa. March 5, 2009).  Therefore this Court will only review the specific

facts relevant to 3Com's Motion at issue here.  In summary, DLL initially sued Rasa for breach

of a "Rental Agreement,"[1] entered into on December 5, 2005 by DLL and Rasa, under which

DLL allegedly agreed to lease telephone equipment to Rasa.  (Compl. ¶¶ 6, 18; Countercl.  ¶¶ 95-

96, 108, Ex. 1 pp. 18-20).  At the same time, Rasa also contracted for the provision of telephone

services with Capital 4 pursuant to a "Customer Agreement."  (Compl. ¶ 9; Countercl. ¶¶ 95-97,

101, Ex. 1 p. 9).  Rasa alleges that these Agreements were part of a program called the Power of

$Zero, which provided telecommunication services at a fixed rate for a number of years.

(Countercl. ¶¶ 55-56).

        Under these Agreements, Rasa only made payments to DLL, which would then "pass

through" part of the payments to Capital 4 for the services Capital 4 provided to Rasa.  (Compl.

¶¶ 10-11; Countercl. ¶¶ 55(g)-(k)).  Rasa alleges that Capital 4 did not itself provide the

telecommunications services but instead contracted with licensed service providers through

Public Access Service Agreements.  (Countercl. ¶¶ 55(l), 101(l)).  Rasa also alleges that it did not

actually receive telephone equipment from DLL but instead obtained a cash rebate, offered as an

_____

        [1]The Rental Agreement is sometimes referred to as the Funding Agreement in the various
documents before the Court.

alternative to equipment under the Power of $Zero program.  (Countercl. ¶¶ 55(b), 56(c)).

However, by letter dated September 15, 2007, Capital 4 informed its customers that it could no longer meet its obligations under the Customer Agreement, including the provision of telecommunications services.  (Countercl. ¶ 136, Ex. 16).  Rasa then stopped making any payments to DLL.  (Compl. ¶ 14).  Rasa alleges that the letter "effectively canceled Defendants' obligations under the contract . . . 'for good cause'—telephone services would no longer be provided by Capital 4 Inc., or the 'Power of $Zero Partnership.'"  (Countercl. ¶ 138).  DLL sued for breach of contract and unjust enrichment, asserting that Rasa was obligated to make its payments to DLL despite the loss of services provided by Capital 4.  (Compl. ¶¶ 17-22).

In response to DLL's Complaint, Rasa filed an Amended Answer, Affirmative Defenses, Amended Counterclaim, and Third Party Complaint (hereinafter "Counterclaim") and joined Capital 4 and 3Com as parties to the litigation.  (Doc. 34).  Rasa's central allegation is that its Rental Agreement with DLL was only one of a complex series of contracts between itself and the Power of $Zero Partnership (hereinafter "Partnership"), which is comprised of DLL, Capital 4, and 3Com.  Based on both the language of the Customer Agreement and on the relationships and contracts among members of the Partnership, Rasa argues that its obligation to pay DLL was extinguished when the Partnership stopped providing telecommunications services.[2]  Rasa also

---

[2]Rasa has also alleged that DLL, Capital 4, and 3Com have engaged in similar fraudulent acts affecting at least eighteen other businesses.  (Countercl. ¶ 148).  Likewise, DLL has filed similar suits to the suit filed against Rasa.  Those suits, which have been assigned to the undersigned, allege that additional businesses violated their respective Rental Agreements under the same 3Com Power of $Zero Solution at issue here.  See De Lage Landen Fin. Servs. v. Viewpoint Computer Animation, Inc., 08-cv-0534 (DLL's motion to dismiss counterclaims granted in part and denied in part); De Lage Landen Fin. Servs. v. Grayson County Coll., 08-cv-0532 (settled); De Lage Landen Fin. Servs. v. Barton Nelson, Inc., 08-cv-0530 (motion to dismiss counterclaims denied and case subsequently settled); De Lage Landen Fin. Servs. v. Mid-

asserts that members of the Partnership made fraudulent misrepresentations regarding the relationship of the Customer and Rental Agreements and Rasa's obligations under those contracts.  (Countercl. ¶¶ 212-18, 221-27).

The Customer Agreement between Rasa and Capital 4 expressly incorporated an eBrochure found on the Power of $Zero website entitled "How does the 3Com Power of $Zero Solution Work?"  (Countercl. ¶¶ 75-77, Ex. 1 pp. 11-14).  Rasa alleges that the eBrochure more specifically describes the Power of $Zero Program (hereinafter "Program") and the Partnership. (Countercl. ¶¶ 75-77).  One provision of the eBrochure relevant to the instant Motion described termination of the Customer Agreement by the customer as follows:

¶ 32:   Can I cancel the 3Com Power of $Zero Customer Agreement in its entirety?

Yes.  You have the option to cancel the Agreement at any time.  If We fail to perform and good cause ("Good Cause") exists.  You may cancel the 3Com Power of $Zero Customer Agreement.
. . . .

¶ 34:   What happens to my obligation under the Funding Agreement if the 3Com Power of Zero Customer Agreement is terminated for Good Cause?

If the Agreement is properly terminated for Good Cause, You grant Us Power of Attorney to pay, on a monthly basis, on Your behalf, damages in an amount sufficient to satisfy and discharge Your remaining payment obligations to any third-party funding source that has advanced funds under a Funding Agreement. We will pay these damages, even though You are not making Monthly Payments to Us.

(Countercl. Ex. 1 p. 13).

---

America Healthcare, LP, 08-cv-1264 (motion to dismiss for lack of personal jurisdiction and improper venue denied and case subsequently settled).
    DLL also filed a suit against Capital 4, which is stayed pending the outcome of litigation between 3Com and Capital 4 that is pending in the Southern District of New York.  See De Lage Landen Fin. Servs. v. Capital 4, Inc., 07-cv-3262 (E.D. Pa.) (Yohn, J.).  The suit between 3Com and Capital 4 is more fully discussed below.

**B.**     **Allegations Concerning 3Com**

Rasa claims that 3Com manufactures, wholesales, or delivers telephone systems targeted to be used by small businesses.  (Countercl. ¶ 50).  One of 3Com's alleged roles in the Power of $Zero Partnership was to provide new telephone equipment to Partnership customers if they chose the free equipment option.  (Countercl. ¶ 55(h)).  Rasa claims that on January 31, 2005, Capital 4 entered into a "Strategic Alliance Agreement" with 3Com, under which Capital 4 would promote and exclusively use 3Com communication equipment in the Program, and 3Com would assist Capital 4 in marketing and selling the Program.  (Countercl. ¶ 59-60, Ex. 5).[3]  Rasa asserts that 3Com and Capital 4 entered into additional contracts that furthered their involvement in the alleged Partnership and imposed on 3Com certain responsibilities with respect to Program customers.  For the purposes of this Motion, three of these contracts are particularly important and are more fully described below.

1.     Operations Agreement

First, on November 10, 2006, Capital 4 and 3Com entered into an "Operations Agreement."  (Countercl. ¶ 128, Ex. 3).  The Operations Agreement outlined the parties' rights and obligations related to the Program.  This Agreement included a provision entitled the "Go Dark Solution," which addressed the possibility of Capital 4 being unable to honor its contractual

_____

[3]Rasa has attached this agreement, and the other agreements discussed in the following paragraphs, as exhibits to its Counterclaim.  3Com has not challenged the authenticity of those agreements.  A district court may consider a "document integral to or explicitly relied upon in the complaint."  In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997) (citation omitted); see also Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1195 (3d Cir. 1993) (holding that "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document").  Therefore, this Court will consider these documents as attached to the Counterclaim.

obligations.  The provision first states Capital 4's obligation to "make commercially reasonable efforts" to fulfill its obligations under the Customer Agreements "[i]n order to further protect the POZ Program by preventing the interruption, temporary suspension or cancellation of services provided by Public Access Assets Service[4] providers to POZ Customers."  (Countercl. Ex. 3 p. 10).   However, if Capital 4 is unable to meet the Customer Agreement obligations, the Operations Agreement contemplates the following:

> ¶ 4.3.3       3Com and Capital 4 shall cooperate with one another to implement the following actions immediately following commercially reasonable indications: (i) of Capital 4's intent to declare itself insolvent; or (ii) that Capital 4 is otherwise temporarily unable to honor its obligations under the existing POZ™ Customer Agreements . . .
>
> (d)       3Com shall assume all of the obligations of any and all Public Access Assets Service Agreements entered into by Capital 4 in connection with 3Com Power of $Zero Customer Agreements. . . .

(Countercl. Ex. 3 p. 12).  Therefore, Rasa asserts that under the Operations Agreement, 3Com was obligated to assume the Public Access Service Agreements entered into by Capital 4 to provide telecommunications services to its customers if Capital 4 was unable to honor its obligations under those service agreements.  As a result, Rasa alleges that it was a third party beneficiary of the Operations Agreement.  (Countercl. ¶ 129).

Notably, the Operations Agreement contained a non-assignability clause as well as an inurement clause.  (Countercl. Ex. 3 p. 14 ¶ 7.1).   Furthermore, the Operations Agreement

---

[4]Rasa asserts that the word "Assets" in the term "Public Access Assets Service" was mistakenly used because the word was never defined in the Agreement and the parties intended the contract to say "Public Access Service," which is defined in the Agreement.  (Def.'s Memo. Law Opp'n 3Com's Mot. Dismiss 9 n.6).

provided for mutual indemnification and limited liability between the parties to the Agreement. (Countercl Ex. 3 p. 13 ¶¶ 5.1, 5.2).  The Operations Agreement contained a New York choice-of-law clause.  (Countercl. Ex. 3 p. 14 ¶ 7.2).  These clauses survived expiration or termination of the Operations Agreement.  (Countercl. Ex. 3 p. 12 ¶ 4.5).

      2.    Promissory Notes

Beginning on August 6, 2007, 3Com lent Capital 4 certain sums of money through the issuance of promissory notes.  (Countercl. ¶ 133, Ex. 15).  Between August 6 and August 16, 2007, 3Com issued seven notes totaling $600,000 to Capital 4.  Each note stated: "Use of Proceeds.  Borrower has informed Lender that it intends to use the proceeds of this Note to pay the dial-tone connection fees it owes to third party providers on behalf of its customers." (Countercl. Ex. 15 pp. 4, 9, 14, 19, 24, 29, 34 ¶ 10).

Rasa alleges that these promissory notes in part constitute "commercially reasonable indications" that Capital 4 was unable to honor its existing Customer Agreements, thereby triggering the Go Dark Solution provision in the Operations Agreement.  (Def.'s Memo. Law Opp'n 3Com's Mot. Dismiss 9).

      3.    First Contract Amendment to Operations Agreement

One day after issuing the first promissory note, on August 7, 2007, Capital 4 and 3Com entered into another agreement, called the First Contract Amendment, revising the Operations Agreement's Go Dark Solution provision.  (Countercl. ¶ 130, Ex. 19).  The Amendment made the following relevant changes to ¶ 4.3:

> ¶ 4.3.3      3Com and Capital 4 shall cooperate with one another to implement the following actions immediately, and without opportunity to cure, following commercially reasonable indications: (i) of Capital

4's intent to declare itself insolvent; or (ii) that Capital 4 is otherwise temporarily unable to honor its obligations under the existing POZ™ Customer Agreements . . .

    (c)    Upon request by 3Com, Capital 4 shall assign to 3Com all rights and obligations of Capital under those Capital 4 POZ Customer Agreements which 3Com, in its sole discretion, believe may have a Material Adverse Effect on 3Com if such Customer Agreements are not assigned to 3Com.

. . . .

    (e)    3Com shall assume all of the obligations of any and all Public Access Service commitments entered into by Capital 4 in connection with those Capital 4 Power of $Zero Customer Agreements assigned to 3Com pursuant to Section 4.3.3(c) above. . . .

(Countercl. Ex. 19 pp. 2-3). These provisions appear to give 3Com discretion in assuming Capital 4's Customer Agreements and also provide that 3Com will assume the Public Access Service Agreements if it elects to assume the Customer Agreements. In contrast, the original Go Dark Solution provision in the Operations Agreement provided that 3Com "shall assume" the Public Access Service Agreements if certain conditions occurred; it did not mention assumption or assignment of the Customer Agreements.

      Rasa alleges that it was a third party beneficiary of this modified contract as well. (Countercl. ¶ 132). Rasa claims that 3Com modified the Operations Agreement after learning of the "dire financial condition" of Capital 4. (Countercl. ¶ 130). Rasa further alleges that on August 20, 2007, 3Com invoked the Go Dark Solution provision of the First Contract Amendment but failed to pay the telecommunications service providers, thereby jeopardizing Rasa's telephone and internet service. (Countercl. ¶ 135).

C.      **Lawsuit Between 3Com and Capital 4**

On October 9, 2007, 3Com filed suit against Capital 4 in the Southern District of New York.  See 3Com Corp. v. Capital 4, Inc., et al., S.D.N.Y. 07-cv-8707.  Rasa asserts that in that suit 3Com alleged that it became aware in late 2005 or early 2006 that Capital 4 had cash flow problems "'based on Capital 4's prior need to have 3Com extend it credit.'"  (Countercl. ¶ 147, Def.'s Memo. 9 n.6 (quoting 3Com v. Capital 4, Compl. ¶¶ 31, 32)).  Rasa further alleges that 3Com alleged in that suit that it learned in late July 2007 that Capital 4 was delinquent in paying its Public Access Service providers.  (Id.)  Notably, Rasa relies on these allegations, which alleged that Capital 4 was experiencing financial difficulty and 3Com was aware of those problems, as additional evidence that the Go Dark Solution provision was triggered.  (Def.'s Memo 9 n.6).

Rasa asserts that Capital 4 filed a counterclaim against 3Com alleging that "'3Com represented to Capital 4 that it would partner with Capital 4 to further develop and grow the Power of $Zero program'" and asserting a partnership between 3Com and Capital 4.  (Countercl. ¶ 148 (quoting 3Com v. Capital 4, Countercl. ¶ 16) (emphasis in original)).  In addition, Rasa asserts that Capital 4's counterclaim alleged that 3Com was interested in eventually taking full control of the Program and intended to take full control on April 1, 2007.  (Countercl. ¶ 148(e), (f)).

D.      **Procedural History**

DLL filed its Complaint against Rasa on February 1, 2008.  (Doc. 1).  Rasa then moved to dismiss for lack of personal jurisdiction and improper venue, which this Court denied after a hearing, in a Memorandum and Order filed November 5, 2008.  (Doc. 32).  On November 18,

2008, Rasa filed its Answer, Affirmative Defenses, and Counterclaim, asserting claims against DLL, as well as against 3Com and Capital 4 as third party Defendants and Defendants on the Counterclaim.  (Doc. 34).  DLL responded with a motion to dismiss the counterclaims brought against it.  (Doc. 38).  In a Memorandum and Order dated March 5, 2009, this Court denied in part and granted in part, with leave to amend, that motion to dismiss.  (Doc. 58).

Rasa's Counterclaim included the following claims against 3Com:

| | |
|---|---|
| Count II | Indemnification |
| Count IV | Breach of Contract |
| Counts V and VI | Third Party Beneficiary Claims |
| Count X | Conspiracy to Commit Fraud |
| Count XI | Violation of Texas Consumer Protection Law |
| Count XII | Violation of RICO |

3Com has now moved to dismiss all of the claims brought against it.  (Doc. 47).

## II.    Parties' Arguments

### A.    3Com's Motion to Dismiss

3Com asserts that Rasa's claims for indemnification and breach of contract must be dismissed because 3Com did not assume, and is not otherwise responsible for, Capital 4's obligations to Rasa under the Customer Agreement.  Therefore, 3Com argues it cannot be liable for Capital 4's failure to pay the monthly installments to DLL under the Rental Agreement when Rasa allegedly cancelled the Customer Agreement for good cause.  3Com emphasizes that the Go Dark Solution provision in the First Contract Amendment gave it discretion to assume Capital 4's obligations; that provision, which 3Coms argues was in effect at the time Rasa cancelled the Customer Agreement, did not create an obligation to assume Capital 4's responsibilities.

3Com also argues that Rasa was not a third party beneficiary to either the Operations

-10-

Agreement or the First Contract Amendment because 3Com and Capital 4 did not intend to create any third party rights to enforce those contracts. 3Com cites the presence of non-assignability and inurement clauses in both the Operations Agreement and the Amendment as evidence of the parties' intent to avoid creating a third party beneficiary.

3Com further asserts that Rasa did not sufficiently allege that 3Com engaged in any tortious acts for purposes of both the conspiracy and consumer protection law claims. 3Com argues that it was not the party that made any of the alleged misrepresentations to Rasa and that Rasa could not have reasonably relied on any representations by 3Com because Rasa specifically disclaimed reliance on extra-contractual statements by other parties in an integration clause found in both the Customer and Rental Agreements. 3Com also contends that Rasa did not allege the conspiracy to commit fraud claim with the required specificity. Similarly, with regards to the RICO claim, 3Com argues that Rasa did not sufficiently plead with the requisite specificity the predicate acts 3Com engaged in or the damages Rasa suffered as a result. Therefore, 3Com requests that all counterclaims against it be dismissed.

**B.    Rasa's Response**

Rasa responds that the Go Dark Solution provision in both the Operations Agreement and First Contract Amendment required 3Com to assume Capital 4's obligations to Rasa under the Customer Agreement.[5] Rasa reasons that the Go Dark Solution provision was triggered by commercially reasonable indications of Capital 4's inability to honor its commitments and that 3Com was aware of that inability, as evidenced by the promissory notes and the allegations in the

---

[5]In its memorandum, Rasa admits that it is unclear which version of the Go Dark Solution is applicable here, but argues that this factual dispute provides another reason for denying this Motion and allowing discovery to take place.

lawsuit between 3Com and Capital 4.  Thus, because 3Com assumed the obligations of Capital 4, Rasa claims it can hold 3Com liable for failing to pay monthly installments to DLL as provided for in the Customer Agreement's good cause termination provision.

Rasa further contends that it was a third party beneficiary to both the Operations Agreement and the First Contract Amendment and thus possessed a right to enforce 3Com's obligations under those agreements.  Rasa asserts that the language of both versions of the Go Dark Solution provision indicates the parties' intent to create third party beneficiaries and their anticipation of claims being brought by those parties.  Rasa emphasizes that the Go Dark Solution created obligations between 3Com and Capital 4 specifically to ensure that services to the customers were not interrupted.  Thus Rasa contends that provision  was intended for the benefit of the customers such as Rasa.

With respect to the Texas consumer protection law and conspiracy claims, Rasa responds that it has sufficiently pled an underlying tortious act, namely that a member of the Power of $Zero Partnership engaged in fraudulent conduct on which Rasa relied to its detriment.  Rasa asserts that it may hold 3Com liable for fraudulent misrepresentations made by other members of the alleged Partnership.  Finally, Rasa argues that it has adequately pled both the predicate acts and damages under its RICO claim.  Thus, Rasa asserts that its counterclaims against 3Com should not be dismissed.

## III.    Legal Standards

### A.    Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy exceeds the sum or value of

$75,000, exclusive of interest and costs.

    **B.**    <u>Standard of Review</u>

When deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court may look only to the facts alleged in the complaint and its attachments. <u>Jordan v. Fox, Rothschild, O'Brien & Frankel</u>, 20 F.3d 1251, 1261 (3d Cir. 1994). The Court must accept as true all well-pleaded allegations in the complaint and view them in the light most favorable to the plaintiff. <u>Angelastro v. Prudential-Bache Sec., Inc.</u>, 764 F.2d 939, 944 (3d Cir. 1985). The motion will be granted only when it is certain that no relief could be granted under any set of facts that plaintiff could prove. <u>Ransom v. Marrazzo</u>, 848 F.2d 398, 401 (3d Cir. 1988).

A valid complaint requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In order to state a valid complaint a plaintiff must make a "showing" that is more than just a blanket assertion that he is entitled to relief. <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 232 (3d Cir. 2008). The Supreme Court has also cautioned "that without some factual allegation in a complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice' but also 'grounds' on which the claim rests." <u>Id.</u> (citing <u>Bell Atlantic Corp. v. Twombly</u>, 127 S.Ct. 1955, 1965 n.3 (2007)).

Furthermore, any allegations of fraud must comply with the standard set out under Federal Rule of Civil Procedure 9(b), which provides that, "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." This requirement of particularity means a plaintiff must plead the circumstances surrounding the alleged fraud in order to put the defendant on notice of the precise misconduct at issue. <u>See Seville Indus. Mach. Corp. v. Southmost Mach. Corp.</u>, 742 F.2d 786, 791 (3d Cir. 1984).

**IV.**   **Discussion**

    **A.**   **Indemnification and Breach of Contract (Counts II and IV)**

Rasa alleges that 3Com assumed Capital 4's obligations to Rasa when the Go Dark Solution provision of either the Operations Agreement or the First Contract Amendment was triggered by Capital 4's inability to honor its commitment to provide telecommunication services. Specifically, Rasa asserts that 3Com assumed Capital 4's obligation to pay the monthly installments Rasa owed to DLL under the Rental Agreement because Rasa had implicitly cancelled the Customer Agreement for good cause.   Rasa alleges that 3Com failed to make these payments to DLL on Rasa's behalf, in breach of the Customer Agreement that 3Com had assumed from Capital 4.  Rasa further asserts that it is entitled to indemnification from 3Com in the suit brought by DLL for failure to make those monthly payments.   In addition, Rasa contends that 3Com was in breach of the Customer Agreement because it did not provide telephone services as contracted for in that Agreement.

Taking those extensive allegations in the light most favorable to the plaintiff, and considering the various contracts attached as exhibits to the Counterclaim, Rasa has presented sufficient facts, which, if true, support a claim for both indemnification and breach of contract. Whether 3Com did in fact assume Capital 4's obligations is a question of fact on which discovery is necessary.  Furthermore, the viability of these claims may depend on which version of the Go Dark Solution was applicable to Rasa's situation.  Discovery will also aid in resolving that issue, which requires contract interpretation and consideration of the facts surrounding the execution

and cancellation of the various agreements.[6]

Under the requirements of notice pleading, Rasa has sufficiently pled facts indicating that 3Com may have assumed responsibility to provide services and/or to pay the monthly installments to DLL under the Rental Agreement.  3Com has not shown there are no factual circumstances, which, if true, would entitle Rasa to relief.  The Court will not dismiss such complicated claims involving numerous parties and complex contracts prior to discovery.  The Motion to Dismiss is therefore denied with respect to the indemnification and breach of contract claims.

### B.    Third Party Beneficiary Claims (Counts V and VI)

Rasa also claims that it was a third party beneficiary of the Go Dark Solution provision in both the Operations Agreement and the First Contract Amendment.  Rasa reasons that it thus has a third party right to enforce the Go Dark Solution provision.  Rasa alleges that pursuant to that provision, 3Com was required to assume Capital 4's obligations to pay for the telecommunication services and to pay Rasa's  monthly installments to DLL once Capital 4 was unable to do so.

Under New York law,[7] which follows the Restatement (Second) of Contracts on third

---

[6] The version of the Go Dark Solution in the Operations Agreement only indicated that 3Com would assume the Capital 4's Public Access Service Agreements, not the Customer Agreements, while the version in the First Contract Amendment indicated 3Com could, in its discretion, assume both the Customer Agreements and the Public Access Service Agreements.  If the Go Dark Solution provision in the Operations Agreement applied, Rasa's claim may be more appropriately described as a third party beneficiary claim because it was not a party to the service agreements.

[7] The Operations Agreement and First Contract Amendment both contain choice-of-law provisions selecting New York law.  3Com asserts that New York law is therefore the applicable law for interpretation of these contracts.  Rasa, while not explicitly conceding that New York law

party beneficiary claims, an intended beneficiary is one whose "right to performance is

appropriate to effectuate the intention of the parties to the contract *and* either the performance

will satisfy a money debt obligation of the promisee to the beneficiary or the circumstances

indicate that the promisee intends to give the beneficiary the benefit of the promised

performance." A. Alicea, v. The City of New York, 145 A.D.2d 315, 317-18 (N.Y. App. Div.

1988) (quoting Lake Placid Club Attached Lodges v. Elizabethtown Builders, Inc., 131 A.D.2 d

159, 161 (N.Y. App. Div. 1987)).

      The best evidence of intent to benefit a third party "can be ascertained from the words of

the contract itself." Id.  The language of the contract should be examined in the context of the

other sections of the contract to determine the intent of the contracting parties. Moman v. Sony

BMG Music Entm't, 2009 WL 224685, at *2 (N.Y. Sup. Ct. Jan. 20, 2009). "An intent to benefit

a third party can also be found when 'no one other than the third party can recover if the promisor

breaches the contract . . . or . . . the language of the contract otherwise clearly evidences an intent

to permit enforcement by the third party.'" A. Alicea, 145 A.D. 2d at 317-18 (citing Fourth

Ocean Putnam Corp. v. Interstate Wrecking Co., Inc., 485 N.E.2d 208, 212 (N.Y. 1985)).  See

also Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. Pepsico, Inc., 431 F.3d 1241, 1265 (10th Cir.

2005) (relying on the ability of the direct parties to the contract to recover from each other as

evidence that the parties did not intend to create a third party beneficiary under New York law);

───────────────

should apply, explains in its memorandum that the outcome would not be different under New
York, Pennsylvania, or Texas law because the legal standards for third party beneficiary status
are similar in each state.  Thus, because Pennsylvania courts generally honor choice-of-law
clauses and the parties do not appear to truly disagree about the applicable law, this Court will
use New York law for purposes of this motion when analyzing Rasa's third party beneficiary
claims.

Piccoli A/S v. Calvin Klein Jeasnswear Co., 19 F. Supp. 2d 157, 162 (S.D.N.Y. 1998) (same). The court should also consider whether the contract appears to anticipate potential legal enforcement by a third party.  Moman, 2009 WL 224685, at * 4.  On the other hand, New York courts have found the combined presence of both a non-assignment clause and an inurement clause in a contract to be a strong indication that the parties did not intend to create any third party beneficiaries to the contract.  Piccoli, 19 F. Supp. 3d at 164.

Given the factual allegations in the Counterclaim, specifically that the Go Dark Solution provisions intended to ensure continued provision of services to the customers regardless of Capital 4's financial situation, (see Countercl. Ex. 3 pp. 10-12 ¶¶ 4.3.1, 4.3.3), Rasa has sufficiently pled a third party beneficiary claim.  Whether Rasa will ultimately be able to prove that it possesses an enforceable third party right will depend upon the intent of the parties, the interpretation of the Go Dark Solution provisions' language, and which version of the provision applied.  These questions are fact based and require the parties to engage in discovery.  Furthermore, the language of either Go Dark Solution provision does not provide a clear indication that Rasa was or was not an intended beneficiary, as the provisions contain language pointing to both outcomes.  For example, the provisions contain a non-assignment and an inurement clause, but they also clearly anticipate third party enforcement in a section explicitly providing for indemnification by the contracting parties in case of third party claims.  (see Countercl. Ex. 3 pp. 13-14 ¶¶ 5.1, 5.2, 7.1, 7.2).

With such conflicting evidence, this Court cannot conclude that Rasa is not a third party beneficiary of the contracts under any possible factual circumstance.  Instead the Court must await the benefit of discovery and development of the factual record to aid in construing the

contracts and discerning the parties' intent.  Rasa has sufficiently pled facts that, if true, support

its third party beneficiary claim.  As such, dismissal of this claim is inappropriate at this stage.

### C.    Violation of Texas Consumer Protection Law (Count XII)

The Texas Deceptive Trade Practices Act states:

a)    A consumer may maintain an action where any of the following constitute a
producing cause of economic damages or damages for mental anguish:

(1) the use or employment by any person of a false, misleading, or deceptive act or
practice that is:
   (A) specifically enumerated in a subdivision of Subsection (b) of Section
   17.46 of this subchapter; and
   (B) relied on by a consumer to the consumer's detriment; . . . .

Tex. Bus. & Com. Code Ann. § 17.50(a)(1)(B) (emphasis added).  Therefore, a claim under this

provision of the act requires reliance.[8]  Peltier Enter., Inc. v. Hilton, 51 S.W.3d 616, 624 (Tex.

App. 2000) ("reliance is an essential element of this DTPA claim" (citing Tex.Bus. & Com.Code

Ann. § 17.50(a)(1)(B) (Vernon Supp.1998))).

3Com argues that Rasa's Texas consumer protection claim must be dismissed because of

the eBrochure's integration clause, which is incorporated into Rasa's Customer Agreement with

Capital 4.  That clause states, "Customer . . . is not relying upon any promise or representation of

any kind made by any other party, except as expressly stated in the Agreement."  (Countercl. Ex.

1 at 7 ¶ 52).  3Com argues that because it was not a party to the Customer Agreement, the

integration clause precludes Rasa from relying on any representations made by 3Com.  Because

reliance is required to sustain a Texas consumer protection claim, 3Com asserts that the claim

---

[8]Other provisions of the Deceptive Trade Practices Act do not require reliance.  However,
Rasa did not specifically identify which provision of the Act it alleged in its Counterclaim, and it
does not contest the application of § 17.50(a)(1) by 3Com in 3Com's Motion to Dismiss.

-18-

should be dismissed.  (3Com's Memo. 12).

In response, Rasa argues that the misrepresentations it relies on were made by the Power of $Zero Partnership, of which 3Com is a member.  Relying on agency theory, Rasa reasons it can hold 3Com responsible for misrepresentations by other members of the alleged Partnership. (Def.'s Memo. 21).  Although the Customer Agreement was between "Capital 4 and Customer [here Rasa]" (Countercl. Ex. 1 at 1), the incorporated eBrochure has a 3Com logo in the upper left-hand corner, it is entitled "How does the 3Com Power of $Zero Solution Work?", and it states "The 3Com Power of $Zero Solution, launched in partnership with the 3Com Corporation . . . ." (Countercl. Ex. 1 at 7 ¶ 49).  Rasa has made sufficient allegations that a Partnership existed between 3Com, Capital 4, and DLL, (see Countercl. ¶ 86(k)), and that it therefore entered into the Customer Agreement—which incorporates the terms of the eBrochure—with the Partnership, and not just with Capital 4.  Thus, the integration clause does not preclude reliance on representations made by any member of the Partnership for purposes of this Motion.

Further, under agency theory, 3Com, if proven to be a member of the Partnership, can be held vicariously liable for fraudulent acts of an agent.  "A principal is liable for the fraudulent acts and misrepresentations of its authorized agent, even though the principal had no knowledge of the fraud and did not consent to it, whether or not the principal derives a benefit from it."  III Forks Real Estate, L.P. v. Cohen, 228 S.W.3d 810, 814 (Tex. App. 2007) (citing Carr v. Hunt, 651 S.W.2d 875, 879 (Tex. App. 1983)); see also Travelers Cas. & Sur. Co. v. Castegnaro, 772 A.2d 456, 460 (Pa. 2001) (establishing vicarious liability of principals for actions of agents under Pennsylvania law).  Courts have accepted agency theory to find liability under the Texas Deceptive Trade Practices Act.  "Consumers may show that a defendant is vicariously liable for

-19-

DTPA violations by employing the traditional common law theories of agency or respondeat superior." Coffey v. Fort Wayne Pools, Inc., 24 F.Supp.2d 671, 684 (N.D. Tex. 1998) (citing Qantel Bus. Sys. Inc. v. Custom Controls Co., 761 S.W.2d 302, 305 (Tex. 1988)).

Based on Rasa's extensive allegations regarding the Partnership and 3Com's involvement, this Court will allow Rasa's claim against 3Com for violation of Texas consumer protection law to go forward based on agency theory.

### D.      Conspiracy to Commit Fraud (Count X)

The Court's analysis of the conspiracy claim in its consideration of DLL's motion to dismiss applies here.  In that decision, this Court allowed Rasa's claim of fraudulent misrepresentation to go forward and also serve as the basis of Rasa's conspiracy claim.  Rasa, 2009 WL 564627, at *8-9.  In the instant case, 3Com argues that Rasa has only alleged fraud or misrepresentation against DLL and Capital 4, but not against 3Com.  Therefore, 3Com reasons that Rasa has not alleged an underlying tort against 3Com to form the basis of its conspiracy claim.  (3Com's Memo. 13).  In addition, 3Com asserts that the integration clause in the Customer Agreement, described above, precludes reliance on any extra-contractual representations by non-parties.

Rasa asserts that the alleged fraudulent misrepresentations made by DLL and Capital 4 were made on behalf of the Partnership, of which 3Com is a member.  In addition, Rasa argues that 3Com participated in the RICO violation.  As such, Rasa claims that these allegations establish the necessary underlying tort claim to state a valid conspiracy claim.

As discussed above, Rasa has alleged sufficient facts that a Partnership existed between 3Com, Capital 4, and DLL and that misrepresentations were made on behalf of the Partnership.

In addition, the integration clause would not bar reliance on representations made by the

Partnership, as explained above.  Furthermore, although a conspiracy under Texas,

Massachusetts, and Pennsylvania law[9] requires an "act" in furtherance of the conspiracy, this act

does not need to be committed by every member of the conspiracy.  See Beck v. Prupis, 529 U.S.

494, 503 (U.S. 2000) (describing conspiracy as a "mechanism for subjecting co-conspirators to

liability when one of their member [sic] committed a tortious act"); see also Levin v. Upper

Makefield Tp., 2003 WL 21652301, at *11 (E.D. Pa. 2003) ("Civil conspiracy only acts as a

mechanism for casting a wide net of liability on co-conspirators, who themselves may not have

committed a tortious act." (citing Beck, 529 at 494)).  Thus, 3Com may still be liable for a civil

conspiracy where another member of the conspiracy performed the act, here the

misrepresentation.

However as this Court explained in its Memorandum on DLL's motion to dismiss, if

Pennsylvania law applies, Rasa has not alleged that DLL acted with malice or intent to injure as

required under Pennsylvania conspiracy law.  See Rasa, 2009 WL 564627, at *8-9.  Because it is

not clear at this stage which law applies, this Court will not dismiss the conspiracy claim based

on failure to allege malice or intent to injure.  However, this Court grants leave to amend the

conspiracy claim to allege such facts.

### E.    Violation of RICO (Count XI)

Rasa also brings a claim against 3Com under the Racketeer Influenced Corrupt

Organization Act ("RICO"), 18 U.S.C. § 1961 et seq.  3Com argues that Rasa has not pled this

---

[9]For the purposes of its Motion to Dismiss, 3Com states that any of Pennsylvania, Massachusetts, or Texas law could apply.  However 3Com does not assert that choice of law is outcome-determinative of its argument to dismiss the claim.  (3Com's Memo. 13 n.3).

claim with the requisite specificity, has not alleged that 3Com engaged in a necessary predicate act, and has not specifically alleged any damages or injury.  This Court addressed similar arguments regarding Rasa's RICO allegations in its Memorandum on the Motion to Dismiss the Counterclaim brought by DLL.  Rasa, 2009 WL 564627, at *9-10.  In that decision, the Court allowed Rasa to replead the RICO claim and to also file a RICO case statement, as described in the accompanying order.  Since Rasa has already been given leave to amend the RICO claim, the Court will similarly address 3Com's concerns in the instant Motion to Dismiss by granting the Motion and giving Rasa leave to amend and file the RICO case statement.

**V.     Conclusion**

Rasa has adequately pled facts to support claims for indemnification and breach of contract and for a claim as a third-party beneficiary.  Given the complex nature of the factual allegations, this Court cannot conclude that Rasa would not be entitled to relief under any set of circumstances.  The Court will deny the motions to dismiss these claims and await the development of the factual record during discovery.  Furthermore, as this Court explained in its Memorandum concerning DLL's motion to dismiss the counterclaims, Rasa has sufficiently pled a conspiracy to commit fraud and a violation of the Texas consumer protection law.  The Court will deny the Motion to Dismiss those claims as well, although it grants leave to amend the conspiracy claim.  Finally, the Court grants the motion with respect to the RICO claim but provides leave to amend and file a RICO case statement, as it did on the DLL motion to dismiss.

This case requires the construction of multiple contracts involving multiple parties in the context of complex financial arrangements; the Court cannot decide these claims on a 12(b)(6) motion to dismiss, prior to discovery.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DE LAGE LANDEN FINANCIAL SERVICES, INC., | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | NO. 08-0533 |
| | : | |
| v. | : | |
| | : | |
| RASA FLOORS, LP, | : | |
| | : | |
| Defendant, | : | |
| | : | |
| v. | : | |
| | : | |
| 3COM CORP., and CAPITAL 4, INC., | : | |
| | : | |
| Third Party Defendants and Defendants on the Counterclaim. | : | |

**ORDER**

AND NOW, this 31st day of March 2009, after reviewing 3Com's Motion to Dismiss Rasa's Counterclaim, it is hereby ORDERED that 3Com's Motion is:

(1)     DENIED with respect to Counts II, IV, V, and VI;

(2)     DENIED with respect to Count X, but Rasa has leave to amend the Counterclaim to allege malice if it wishes to plead conspiracy under Pennsylvania law; and

(3)     GRANTED without prejudice and with leave to amend with respect to the RICO claim in Count XII.

It is FURTHER ORDERED that should Rasa amend its Counterclaim to include a properly pled RICO claim in Count XII, Rasa must also file a RICO Case Statement, which

-23-

includes the following, in substance:

    a.     As to each Defendant on the RICO counterclaim, state the alleged misconduct and basis of liability of each Defendant.

    b.     As to the racketeering activity alleged under each RICO count, include the following:

        i.     List each predicate act which Plaintiff on the Counterclaim alleges constitutes the RICO violation, including such specifics as names, dates, and types of communications or acts, and in doing so, Plaintiff may incorporate any exhibits to the Counterclaim;
        ii.    Describe how each predicate act is fraudulent and/or part of a pattern of racketeering activity;
        iii.   State how the alleged predicate acts relate to each other as part of a common plan.

    c.     Describe in detail the alleged enterprise for each RICO claim.  A description of the enterprise shall include the following information:

        i.     The names of the individuals, partnerships, corporations, associations, or other legal entities that allegedly constitute the enterprise;
        ii.    The structure, purpose, function, and course of conduct of the enterprise;
        iii.   Whether any defendants are employees, officers, or directors of the alleged enterprise;
        iv.   Whether any defendants are associated with the enterprise; and,
        v.    Whether Plaintiff is alleging that the Defendants are individuals or entities separate from the alleged enterprise, that the Defendants are the enterprise itself, or members of the enterprise.

    d.     Describe the alleged relationship between the activities of the enterprise and the pattern of racketeering activity.

    e.     Describe how the racketeering activity differs from the usual and daily activities of the enterprise, if at all.

    f.     Describe the direct causal relationship between the alleged injury and the violation of the RICO statute.

    g.     Describe the effect of the enterprise on interstate or foreign commerce.

    h.     If the complaint alleges a violation of 18 U.S.C. § 1962(c), state:

      i.      Who is employed by or associated with the enterprise; and,

      ii.     Whether the same entity is both the liable "person" and the "enterprise" under 18 U.S.C. § 1962(c).

i.      If the complaint alleges a violation of 18 U.S.C. § 1962(d), describe the alleged conspiracy.

j.      Describe the alleged injury to business or property.

k.      Describe the direct causal relationship between the alleged injury and the violation of the RICO statute.

l.      Provide any additional information that you believe would be helpful in processing your RICO claim.

BY THE COURT:

   s:/ Michael M. Baylson
Michael M. Baylson, U.S.D.J.

A:\3Com mtd memo2.wpd

-25-