IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DE LAGE LANDEN FINANCIAL SERVICES, INC., | : : | CIVIL ACTION |
| Plaintiff/Counterclaim Defendant | : : | NO. 08-0533 |
| v. | : | |
| RASA FLOORS, LP, | : | |
| Defendant/Counterclaim Plaintiff, Third Party Plaintiff | : : | |
| v. | : | |
| 3COM CORP., and CAPITAL 4, INC., | : | |
| Third Party Defendants and Defendants on the Counterclaim. | : : : : | |
| DE LAGE LANDEN FINANCIAL SERVICES, INC., | : : | |
| v. | : | |
| NORTH CENTRAL COMMUNICATIONS CORPORATION, | : : | |
| Third Party Defendant on Counterclaim | : : | |

## MEMORANDUM RE: NORTH CENTRAL COMMUNICATIONS, CORP.'S MOTION TO DISMISS

**Baylson, J.**                                                                                                                   **March 2, 2010**

      Pending before the Court is Third-Party Defendant North Central Communications Corporation's ("NCC") Motion to Dismiss Plaintiff De Lage Landen Financial Services, Inc.'s ("DLL") Third-Party Complaint, which brings a claim for contribution and indemnity under the Texas Deceptive Trade Practices and Consumer Protection Act ("DTPA"), Tex. Bus. & Comm. Code § 17.555, and a claim for indemnity under Texas common law against NCC. For the reasons stated below, the Motion will be denied.

I.  **Factual and Procedural Background**

This suit arises out of a contract dispute between DLL and Defendant Rasa Floors, LP ("Rasa"). The Court previously detailed the background of this case in its November 4, 2008 Memorandum denying Rasa's Motion to Dismiss. See De Lage Landen Fin. Servs., Inc. v. Rasa Floors, LP, No. 08-0533, 2008 WL 4822033, at *1-2 (E.D. Pa. Nov. 4, 2008). A brief summary of the relevant background is set forth below.

On February 1, 2008, DLL filed a complaint alleging Rasa Floors, LP ("Rasa") breached the parties' "Rental Agreement" by failing to make payments in exchange for leased telephone equipment provided by the "Power of $Zero" ("POZ") program. (Docket No. 1.) On November 18, 2008, Rasa filed a counterclaim alleging that DLL conspired with other subsequently added third-party Defendants 3Com Corporation ("3Com") and Capital 4, Inc. ("Capital 4," collectively with DLL and 3Com, "Counterclaim Defendants"), the other members of the POZ partnership, to defraud Rasa. (Docket No. 34.) The amended counterclaim generally refers to Counterclaim Defendants' purported misrepresentations, and details how Counterclaim Defendants' website, brochure, and contracts allegedly misrepresent the services that they provided to Rasa. (Docket No. 70.).

Soon after, DLL moved for, and was granted, leave to add as a Third-Party Defendant NCC, which allegedly solicited the business of Rasa, had many meetings with Rasa, passed on CounterClaim Defendants' website, brochure, and contracts to Rasa, procured Rasa's signatures on the Rental Agreement and related contracts, and earned a commission from Counterclaim Defendants as a result. (3d Party Compl. ¶¶ 10, 21-26, 33-42.) DLL's Third-Party Complaint brings an indemnity claim under Texas common law, and a contribution and indemnity claim

under Texas Deceptive Trade Practices and Consumer Protection Law ("DTPA"), Tex. Bus. & Comm. Code § 17.555 against NCC, alleging that because NCC directly communicated with Rasa, NCC is liable for all sums DLL is required to pay as a result of Rasa's action. (Docket No. 105.) DLL's common law indemnity claim alleges that "[t]o the extent that DLL is found liable for any fraudulent misrepresentations made to Rasa . . . , such liability would be purely vicarious and based solely upon NCC's actions or omissions in its capacity as a Reseller." (3d Party Compl. ¶ 53.)

On November 24, 2009, NCC moved to dismiss DLL's Third-Party Complaint.

## II. The Parties' Contentions

NCC contends that under Texas Law, a party can only be indemnified if it may be held liable for the damaging event of which the consumer complains. (Mot. to Dismiss 4.) NCC continues that because Rasa only alleges that Counterclaim Defendants made written misrepresentations, and because nothing in the record suggests that NCC contributed in any way to these written statements, DLL failed to state with particularity a basis for indemnifying NCC. (Mot. to Dismiss 4, 11.) As for the claim under Texas common law, NCC avers that DLL is only entitled to indemnity if its claim is supported by a cognizable vicarious liability theory; however, because vicarious liability "is liability placed upon one party for the conduct of another," and "[t]he conduct of NCC is not the basis for the responsibility of DLL to Rasa for the fraudulent misrepresentations," NCC argues that DLL cannot make out an indemnity claim under Texas common law. Letter from Counsel for NCC to Judge Michael M. Baylson 1-2, Feb. 5, 2010 (on

file with the Court) (hereinafter NCC Supp. Letter).[1]  NCC thereby urges the Court to dismiss DLL's Third-Party Complaint.

In response, DLL avers that under Texas law, merely passing along another's false misrepresentations can be a basis for indemnity, that it is enough that NCC's representations contributed to DLL's liability, and the indemnity claim need not center on the same acts or practices underlying the fraud claim.  (DLL Resp. 3, 8-10, Docket No. 111.)  For vicarious liability under Texas common-law, DLL contends that "Rasa's pleading make clear that Rasa is relying on the concept of agency as a way to make DLL liable for the allegedly false information provided to Rasa by NCC," and that "Rasa clearly had the right to pursue its own claims against NCC."  Letter from Counsel for DLL to Judge Michael M. Baylson 2-3, Feb. 4, 2010 (on file with the Court) (hereinafter DLL Supp. Letter).  According to DLL, "while it is true that a principal has no right to indemnity until after there has been a judicial determination that an agency exists and that an agent is liable to the injured party, those questions are properly resolved by the fact-finder as part of the instant suit."  (DLL Supp. Letter 4.)  DLL thus urges the Court to deny NCC's Motion to Dismiss.

III.    **Legal Standards**

When deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court may look only to the facts alleged in the complaint and its attachments.  <u>Jordan v. Fox, Rothschild, O'Brien & Frankel</u>, 20 F.3d 1250, 1261 (3d Cir. 1994).  The Court must accept as true all well-pleaded allegations in the complaint and view them in the light most favorable to the plaintiff.  <u>Angelastro v. Prudential-Bache Sec., Inc.</u>, 764 F.2d 939, 944 (3d Cir. 1985).

---

[1] After reviewing the pending Motion and the responses thereto, the Court requested that the parties submit additional letters regarding vicarious liability under Texas common-law.

A valid complaint requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). Iqbal clarified that the Court's decision in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), which required a heightened degree of fact pleading in an antitrust case, "expounded the pleading standard for 'all civil actions.'" 129 S. Ct. at 1953.

The Court in Iqbal explained that, although a court must accept as true all of the factual allegations contained in a complaint, that requirement does not apply to legal conclusions; therefore, pleadings must include factual allegations to support the legal claims asserted. Id. at 1949, 1953. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 1949 (citing Twombly, 550 U.S. at 555); see also Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) ("We caution that without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice,' but also the 'grounds' on which the claim rests." (citing Twombly, 550 U.S. at 556 n.3)). Accordingly, to survive a motion to dismiss, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556).

**IV.  Analysis**

The Court will separately analyze DLL's claim for contribution and indemnity under the DTPA, and its claim for indemnity under Texas common law.

**A.  DLL's DTPA Claim**

Section 17.555 of the DTPA provides as follows:

A person against whom an action has been brought under this subchapter may seek contribution or indemnity from one who, under the statute or common law, may have

> liability for the damaging event of which the consumer complains. A person seeking indemnity as provided by this section may recover all sums that he is required to pay as a result of the action, his attorney's fees reasonable in relation to the amount of work performed in maintaining his action for indemnity, and his costs.

Tex. Bus. & Comm. Code § 17.555. The central question in this case is whether NCC can be held liable for the fraudulent misrepresentations of which Rasa complains. NCC, which is represented by the same counsel as Rasa, reads Rasa's counterclaim narrowly as only focusing upon written representations, which DLL purportedly has not alleged that NCC had any role in drafting. (NCC Reply 7 n.6, Docket No. 116.) DLL, however, contends that "NCC's role in drafting the written representations is an issue of fact that cannot be resolved at the motion to dismiss stage." (Resp. 7 n.2.)

The Court agrees with DLL that there remains a question of fact as to whether NCC played a role in drafting the written representations that Rasa purports to be fraudulent. Notwithstanding NCC's contention that it was not involved in the drafting process, NCC conceded that it "prepared" "Schedule A to the customer agreement" (Mot. to Dismiss 4), and Rasa alleged that NCC "[a]ccessed a web site maintained by the [POZ] Partnership . . . , and prepared a written offer" to Rasa (Am. Answer, Aff. Defenses, Countercl. & 3d Party Compl. ¶ 104a.).

Moreover, the Texas Supreme Court has clarified that a party can be held liable under the DTPA for merely "passing along" another's false representations. Miller v. Keyser, 90 S.W.3d 712, 714 (Tex. 2002). Miller held specifically that "because the DTPA allows a consumer against 'any person,' an agent may be held personally liable for the misrepresentations he makes when acting within the scope of his employment." Id. (quoting Tex. Bus. & Com. Code § 17.50(a)(1)). Miller explained that "[t]he statute actually contemplates that an agent may be innocent of any knowing misrepresentation by merely passing along information for the company," but "does not excuse an agent from being a party to a suit." Id. at 718. In effect, the

DTPA permits Rasa to bring fraudulent misrepresentation claims against NCC; thus, should there be evidence indicating that NCC was responsible, either fully or in part, for misrepresenting the POZ program to Rasa, DLL can seek contribution or indemnity from NCC. Drawing all facts in favor of DLL, the Court, therefore, cannot conclude as a matter of law that DLL has failed to state with particularity a claim for contribution and indemnity under section 17.555 of DTPA, and that this claim should be dismissed prior to the completion of discovery.

## IV. DLL's Common Law Indemnity Claim

As for DLL's remaining claim, "[u]nder Texas law, the availability of common law indemnity is extremely limited." Vecellio Ins. Agency, Inc. v. Vanguard Underwriters Ins. Co., 127 S.W.3d 134, 138 (Tex. App. 2003)  Texas's comparative negligence statute "has abolished the common law doctrine of indemnity between joint tortfeasors even though the statute does not expressly mention that doctrine." Aviation Office of Am., Inc. v. Alexander & Alexander of Tex., Inc., 751 S.W.2d 179, 180 (Tex. 1988). Meanwhile, "[c]ommon law indemnity survives in Texas only in products liability actions to protect an innocent retailer in the chain of distribution and in negligence actions to protect a defendant whose liability is purely vicarious in nature." Vecellio, 127 S.W.3d at 138. There is no question that this case does not involve products liability. The question remains whether Texas common law recognizes a theory of vicarious liability that can support DLL's indemnity claim.

NCC noted in a footnote to its Motion to Dismiss that although a consumer under the Texas act "could sue an agent who passes on fraudulent misrepresentations created by the principal, which the agent did not know were fraudulent, and that agent could seek indemnification," "[i]n this case," the consumers "have sued the principals directly," (Mot. to Dismiss 12 n. 5), thereby suggesting that a vicarious liability theory cannot be brought by a principal seeking indemnification from an agent. NCC, however, despite being asked by this

7

Court to provide cases indicating that Texas law does not permit a principal to bring an indemnity claim against an agent based on vicarious liability, has failed to do so. (See NCC Supp. Letter.)

Contrary to NCC's suggestion, such a theory appears to be available to DLL. Vicarious liability, under Texas law, is "placed upon one party for the conduct of another, based solely upon the relationship between the two." Id. In other words, Texas "common law indemnity is recoverable by a defendant who, through no act of his own, has been made to pay for the negligence of another defendant based solely upon the relationship between the two defendants." St. Anthony's Hosp. v. Whitfield, 946 S.W.2d 174, 178 (Tex. App. 1997).

At this stage in the litigation, prior to full discovery, the Court cannot conclude that DLL will not be able to make this showing. "[T]he doctrine of respondeat superior" permits "an employer [to be] exposed to liability not because of any negligence on its part, but because of the employee's negligence in the scope of that employment." Id. Although this can work to an innocent agent's advantage, see, e.g., Miller, 90 S.W.3d at 714-18 nothing prevents the doctrine from also being applied to an innocent principal that was held liable solely based upon its relationship to an agent solely responsible for making fraudulent misrepresentations. See, e.g., St. Anthony's Hosp., 946 S.W.2d at 178 (reversing the grant of summary judgment on a defendant hospital's common law indemnity claim against a defendant nurse, because "no negligence by the Hospital ha[d] been alleged by any party"); see also J.M.K. 6, Inc. v. Gregg & Gregg P.C., 192 S.W.3d 189, 204 (Tex. App. 2006) (reversing the grant of summary judgment on a principal's common law indemnity claim because the agent "neither asserted nor attempted to prove that its alleged representations fell outside [its] role as [an] agent"). Thus, Texas law suggests that DLL can seek indemnity from NCC upon showing that NCC acted as DLL's agent,

8

by being a value-added vendor for Counterclaim Defendants,[2] and that NCC was the party responsible for any misrepresentations regarding the POZ program, because it dealt directly with Rasa and induced Rasa to agree to be a POZ customer, such that the only basis for DLL's liability was its relationship with NCC. The Court expresses no opinion as to whether DLL will be able to make these showing. Rather, prior to full discovery, the Court will not dismiss DLL's common law indemnity claim.

## V. Conclusion

Consistent with the reasons detailed above, NCC's Motion to Dismiss DLL's Third-Party Complaint will be denied. An appropriate Order follows.

---

[2]Note that the parties dispute how to characterize NCC's relationship to DLL. DLL considers NCC a "value-added reseller . . . of telephone equipment included as part of the POZ program" (Third Party Compl. ¶ 9), which in turn is funded by or run by DLL, 3Com, and Capital 4. NCC contends that contrary to this allegation, "NCC was contractually authorized by the [POZ] partnership, acting through its operational agent, Capital 4, Inc. . . to market and sell 3Com products." (Mot. to Dismiss 9) (quotation marks omitted).

9